UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAREN MINNIFIELD, | ) | NO. EDCV 08-624-CT |
| Plaintiff, | ) ) | OPINION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

## SUMMARY OF PROCEEDINGS

On May 13, 2008, plaintiff, Karen Minnifield ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). Following the parties' consent to proceed before the magistrate judge, plaintiff filed a brief with points and authorities in support of remand or

reversal on September 29, 2008. On November 6, 2008, the Commissioner filed a brief and opposition to plaintiff's brief.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

On September 26, 2006, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability since February 7, 2005 due to two cervical discs, back and left knee problems. (TR 58).[1] The application was denied initially and upon reconsideration. (TR 29-39).

On May 8, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 26). On January 10, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 243-58). The ALJ also considered vocational expert ("VE") testimony. On February 20, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits. (TR 10-17). On March 5, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 5). On April 15, 2008, the request was denied. (TR 2-4). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

### 2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ committed the following reversible errors:

1. Failed to consider the treating physician's opinion regarding plaintiff's severe disc disease at L4-5 and L5-S1 with foraminal stenosis.

2. Failed to determine whether the plaintiff's condition meets or equals listing 1.02 or 1.04.

3. Failed to properly consider the mental and physical demands of plaintiff's past relevant work.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

DISCUSSION

1. <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. Issues

   A. The ALJ's Assessment of Plaintiff's Treating Physician's Opinion

Plaintiff asserts that the ALJ failed to give proper weight to the opinion of Rajiv Puri, M.D., one of plaintiff's treating physicians. Specifically, plaintiff contends that records from Dr. Puri suggest that plaintiff suffered from foraminal stenosis, L4-5 and L5-S1, on the right side as a result of a prior spinal surgery. Despite that finding, the ALJ concluded that plaintiff had no significant canal stenosis or neural foramina. In so concluding, according to plaintiff, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Puri's finding to the contrary.

A treating physician's opinion generally is entitled to great weight. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). The weight given a treating physician's opinion depends on whether the opinion is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 416.927.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). A medical opinion is considered uncontroverted if all the underlying medical findings in the record of plaintiff's physical impairments are similar. Sprague, 812 F.2d at

5

1230. To reject the uncontroverted opinion of plaintiff's physician, the ALJ must present clear and convincing reasons for doing so. Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751).

If, on the other hand, the treating physician's opinion is contradicted by other doctors, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence for doing so. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001). Furthermore, "where the opinion of the [plaintiff's] treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Orn v. Astrue, 495 F.3d 625, 632. "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Here, the ALJ committed no material error in his assessment of Dr. Puri's opinion. First, contrary to plaintiff's reading, the ALJ's opinion makes clear that the ALJ did not reject Dr. Puri's opinion. On the contrary, the ALJ relied, in part, on Dr. Puri's opinion in finding that plaintiff suffered from multiple level degenerative disk disease. (TR at 13; see also 201-04). This finding was confirmed by a consultative examiner's opinion. (Id.).

Second, to the extent that Dr. Puri's opinion in any way conflicted with the consultative examiner's opinion, the ALJ was free to resolve this conflict in favor of the consultative examiner. As the ALJ noted, the consultative examiner found that plaintiff exhibited "no significant canal stenosis or neural foramina." (TR at 13). This finding is corroborated by other medical evidence in the record. Specifically, N.J. Reddy, M.D., the radiologist who reviewed plaintiff's 2005 MRI, likewise found no canal stenosis, lateral recess narrowing, or foramen encroachment. (TR at 225). Notably, even Dr. Puri's initial radiology report found that the "x-ray of the lumbar spine revealed the presence of multiple degenerative disk disease," (TR at 204) but made no mention of foraminal stenosis. Furthermore, Dr. Puri opined in July 2005 after review of the June 2005 MRI that plaintiff would only stay off work for "at least two weeks" and return to work in three weeks "if all is well." (TR 201, 225). Dr. Puri did not suggest that plaintiff was disabled for the requisite 12 month duration.

Given this record, the court finds that the ALJ made no material error in assessing the opinion of Dr. Puri.

    B.   <u>The ALJ's Finding that Plaintiff's Impairment Did Not Meet or Equal a Listed Impairment</u>

Plaintiff contends that the ALJ erred in concluding that plaintiff's impairment fails to meet or equal a listed impairment. More specifically, plaintiff asserts that her impairment meets or equals Listed Impairment Numbers 1.02 and 1.04. According to plaintiff, the ALJ's conclusion to the contrary was flawed because the ALJ provided no basis for his conclusion.

If the ALJ concludes at step two of the sequential evaluation that the plaintiff's impairments are "severe" within the meaning of the Act, the ALJ proceeds at step three of the sequential evaluation to compare the plaintiff's impairments to the impairments listed in the "Listing of Impairments" set forth in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. See 20 C.F.R. § 416.925. If any "severe" impairment, or combination of "severe" impairments, meets or equals a listed impairment, the plaintiff is deemed disabled. Id.

The plaintiff's impairment need not precisely meet the criteria of the listing in order to obtain benefits. If the plaintiff's impairment or combination of impairments is medically equivalent to one in the listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d); Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989). Medical equivalence will be found if the medical findings are at least equal in severity and duration to the listed findings. Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.929, 416.928. The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. Id.

Here, the ALJ did not commit material error in concluding that plaintiff's impairment did not meet or equal the impairments listed in sections 1.02 or 1.04.[2] Although the medical evidence showed that

---

[2] Listed Impairment 1.02 can be established where the medical evidence establishes the following:

> Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g.,
> subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs
> of limitation of motion or other abnormal motion of the
> affected joint(s), and findings on appropriate medically
> acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint
> (i.e., hip, knee, or ankle), resulting in inability to
> ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper
> extremity (i.e., shoulder, elbow, or wrist-hand), resulting
> in inability to perform fine and gross movements
> effectively, as defined in 1.00B2c.

20 C.F.R. 404, Subpt. P. App. 1, 1.02.

Listed Impairment 1.04 can be established where the medical evidence establishes the following:

> Disorders of the spine (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral
> fracture), resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or
> pathology report of tissue biopsy, or by appropriate
> medically acceptable imaging, manifested by severe burning
> or painful dysesthesia, resulting in the need for changes in
> position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication,

plaintiff suffered from degenerative disk disease, it also showed that she had normal heel to toe walking, that she was able to squat, and that she required no assistive device or knee bracing. (TR at 136-40). Further, the medical evidence showed that plaintiff could perform gross and fine motor skills without restrictions. (Id. at 140). And as discussed above, the medical evidence showed that plaintiff exhibited no significant canal stenosis or neural foramina. (TR at 13, 136, 225).

Moreover, the ALJ adequately explained the basis for his finding that plaintiff's impairment did not meet or equal a listed impairment. Although plaintiff criticizes the ALJ's finding as conclusory, the ALJ reached this conclusion only after summarizing the medical evidence in the record. Moreover, plaintiff has not met her burden at step three of the sequential evaluation of showing her impairments meet or equal a listed impairment.

Accordingly, the ALJ committed no material error in so concluding.

### C. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

The ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform her past relevant work as a business developer, sales manager, and disaster preparedness coordinator. Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. In particular, plaintiff faults the ALJ for

---

    established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. 404, Subpt. P. App. 1, 1.04.

finding that plaintiff was able to perform her past work without providing specific findings or analysis regarding the physical and mental demands required of that past work.

At step four of the sequential evaluation, plaintiff has the burden of showing that the plaintiff could no longer perform the plaintiff's past relevant work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001). Nonetheless, the ALJ had the duty "to make the requisite factual findings to support his conclusion." <u>Id.</u> This duty requires the ALJ to examine plaintiff's "'residual functional capacity and the physical and mental demands' of [plaintiff's] past relevant work." <u>Id.</u> at 844-45 (quoting 20 C.F.R. §§ 404.1520(e), 416.920(e)). Plaintiff must be able to perform his past relevant work <u>either</u> as actually performed or as generally performed in the national economy. <u>Pinto</u>, 249 F.3d at 845 ("[w]e have never required explicit findings at step four regarding a [plaintiff's] past relevant work both as generally performed <u>and</u> as actually performed") (emphasis in original).

Here, the ALJ's finding that plaintiff could return to her past relevant work was supported by the evidence in the record. Specifically, the consultative examiner, after conducting an independent examination of plaintiff, concluded that plaintiff could perform the physical demands associated with light work. (<u>See</u> TR at 140). This conclusion was echoed by that of a non-examining state agency physician. (TR at 127-32). At the hearing before the ALJ, a vocational expert testified that plaintiff's past relevant work was either light or sedentary. (TR at 13-15). Further, the vocational expert testified that someone with plaintiff's limitations could perform all of plaintiff's past relevant work. Although plaintiff faults the ALJ for

11

failing to account for the mental demands of plaintiff's past relevant work, the record is devoid of any medical evidence suggesting that plaintiff suffers from any mental condition or mental limitations that would affect her ability to perform that work.[3]

In short, the ALJ's finding that plaintiff could perform her past relevant work is supported by the record. Accordingly, the ALJ committed no material error in so finding.

## CONCLUSION

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: December 2, 2008

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff testified that the pain she endures from her physical impairments affects her ability to concentrate. (TR at 250). However, the ALJ found plaintiff's testimony less than credible, a finding not challenged here. (TR at 15). Moreover, plaintiff testified that she takes pain medication that alleviates her pain and causes no side effects. (TR at 252-53).

10

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Karen Alane Minnifield<br>(Claimant) | Supplemental Security Income |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On September 26, 2006, the claimant, Karen Alane Minnifield, protectively filed an application for supplemental security income, alleging disability beginning February 7, 2005. The claim was denied initially on February 21, 2007, and upon reconsideration on April 12, 2007. Thereafter, the claimant filed a timely written request for hearing on May 4, 2007 (20 CFR 416.1429 *et seq.*). Two days prior to her request for hearing, the claimant filed a second Title XVI application that was denied on May 4, 2007 because the claimant's countable income exceeded her prospective Title XVI payment amount. The undersigned has consolidated these two applications for the purpose of administrative efficiency and the claimant's alleged disability will be examined from the protective filing date of her prior application, September 26, 2006.

On January 10, 2008, the undersigned Administrative Law Judge held a Video Hearing (20 CFR 416.1436(c)). The claimant appeared in San Bernardino, California, and the undersigned presided over the hearing from Phoenix, Arizona. Sandra K Richter, an impartial vocational expert, testified before the undersigned at the hearing. The claimant is represented by Bill Latour, an attorney. Before making this decision, the undersigned carefully considered all evidence marked as exhibits in the claimant's file, the testimony at the hearing, and the arguments presented.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

See Next Page


EXHIBIT

After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant has not been under a disability within the meaning of the Social Security Act since September 26, 2006, the date the application was protectively filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must

See Next Page



consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant has not engaged in substantial gainful activity since September 26, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).**

There is no evidence that the claimant has performed SGA since the protective filing date of her application. The undersigned notes, however, that the claimant has received State disability benefits in the past and that she is currently receiving Retirement Insurance Benefits.

**2. The claimant has the following severe impairments: lumbar degenerative disc disease status post 1977 laminectomy and left knee degenerative arthritis status post Mach 2005 arthroscopy (20 CFR 416.920(c)).**

The medical evidence of record shows the claimant injured her left knee at work on February 7, 2005. The claimant was examined and diagnosed with internal derangement of the knee. She underwent arthroscopy on the same knee on March 17, 2005. At this time, the claimant also complained of persistent low back pain. In May 2005, the claimant received a series of epidural injections by Joe Park, M.D. Dr. Park diagnosed the claimant with various back disorders, including lumbar radiculopathy secondary to herniated disc (exhibit 1F/69-70 and 122-128). On

See Next Page



June 1, 2005, magnetic resonance imaging (MRI) of the lumbar spine revealed the presence of multiple level degenerative disk disease (exhibit 1F/22).

On August 20, 2006, the claimant underwent a chiropractic examination. The claimant complained of back, neck, and left knee pain. Testing revealed positive orthopedic findings, positive MRI findings, and a loss of biomechanical function of the spine. The examiner, Gabriel L. Stine, D.C., diagnosed the claimant with cervical/thoracolumbar/sacroiliac strain/sprain. Dr. Stine also diagnosed radiculitis and internal derangement of the left knee post surgery. The doctor opined that the claimant had lost her ability to work above shoulder level with the right dominant arm. Dr. Stine recommended conservative chiropractic treatment as palliative care (exhibit 1F/69-77).

At the request of the State agency, the claimant underwent a consultative orthopedic examination on February 3, 2007. MRI of the lumbar spine again revealed degenerative disc disease of the lumbar spine with bulging disc at L2-L5. However, there was no significant canal stenosis or neural foramina. The claimant had a slight antalgic gait in the left lower extremity. She had normal heel and toe walking and was able to squat. The claimant required no assistive device or knee bracing. The examiner, Jeff Altman, M.D., concluded that the claimant had the physical capacity to perform a wide range of light work (exhibit 1F/23-27).

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The undersigned specifically considered sections 1.02 and 1.04 of the Listings.

**4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional requirements of light work. She should avoid even moderate exposure to vibration and to hazards, i.e. machinery and heights. Additionally, the claimant cannot work above shoulder level with the dominant right upper extremity.**

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority

See Next Page



of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work

In making the above finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929, SSRs 96-4p and 96-7p, and Bunnell v. Sullivan, 945 F.2d 341 (9th Cir. 1991). The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) describes the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

See Next Page



6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

The claimant testified that she has been unable to work since she injured herself on the job in February 2005. She complained of problems with turning her head to the left and down. The claimant stated that she has numbness in both hands and that she is unable to lift and grip items with her hands. She testified to having a carpal tunnel release on the right hand in 1996 or 1997 and indicated that she needs surgery on the left hand. The claimant alleged severe back pain that radiates to the legs. She also believes she has problems with the left knee and concentration.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The claimant only brought up her bilateral hand problems and history of carpal tunnel syndrome (CTS) at the hearing. This impairment was not alleged in her application and there is no evidence of CTS in the submitted records, including the references to the claimant's past surgical history (exhibits 1E/44 and 1F/24, 35 and 70-71). Thus, the claimant failed to mention this alleged medical problem to any doctor, including the consultative examiner, Dr. Altman.

The claimant testified to significant difficulty with lifting and gripping with both hands, but her range of motion in the upper extremities, including the hands, is within normal limits (exhibit 1F/25). Her grip strength is 40 pounds on the left and 70 pounds on the right. Her motor strength is 5/5 throughout both upper and lower extremities (exhibit 1F/26).

Upon physical examination, the claimant's left knee was tender with a normal range of motion. She had only a slightly limited range of motion of the low back. The claimant had normal neurological findings as well (exhibit 1F/23-27).

The claimant indicates that she was a "disabled housewife" between the late 1980s and September 2002 (exhibit 1E/21). Yes, she was able to work for several years after September 2002 until her accident and injury in February 2005. The claimant stated that she never went back to work after the accident and was eventually fired in August 2005.

The claimant alleges no negative side effects from her medication regimen. She stated that she used extra strength Tylenol for pain prior to August 2007. Since then, she has used Vicodan, but has not used this pain medication for months at a time.

She testified that she has been on State disability benefits in the past. She stated that her only current income is the receipt of Retirement Insurance benefits. However, the undersigned notes that a May 2, 2007 query by the Administration indicated she reported $1,500-$2,000 per month in income from her son to help pay the bills.

See Next Page


EXHIBIT

In evaluating the medical evidence and medical opinion evidence, the undersigned must assign the appropriate weight to evidence provided by the various medical sources. Under Social Security Ruling 96-2p, a medical opinion by a treating physician must be given controlling weight if: (a) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (b) the opinion is not inconsistent with the other substantial medical and nonmedical evidence in the record.

In the instant case, only one of the claimant's treating physicians, Dr. Stine, has provided a medical source statement on the claimant's physical residual functional capacity that relates to the adjudicatory period. However, the undersigned notes that the doctor is a chiropractic physician and not a medical doctor. On August 20, 2006, Dr. Stine opined that the claimant had lost her ability to work above shoulder level with her right arm. The claimant also has weakened grip strength. The undersigned gives Dr. Stine's medical opinions limited weight, as these same opinions are only partially supported by the evidence of record. The undersigned agrees that the claimant is unable to work above shoulder level with her right upper extremity because of mild to moderate loss of motion of the cervical spine and the muscles of the posterior neck (exhibit 1F/43-44).

The undersigned gives substantial weight to the medical opinions of the consulting examiner, Dr. Altman. After examining the claimant, the doctor concluded that the claimant could perform light work, based on her physical limitations. Although the undersigned generally agrees with the medical opinions of Dr. Altman, the record does support some additional physical limitations.

Social Security Ruling 96-6p states that findings of fact made by State agency medical consultants and other program physicians regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence on nonexamining sources to be considered and weighed along the medical evidence from other sources. In this case, the undersigned assigns substantial weight to the medical opinions of the State agency's physician. The claimant is capable of performing a wide range of light work (exhibit 1F/14-19).

**5. The claimant is capable of performing past relevant work as business developer, sales manager, and disaster preparedness coordinator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

According to the vocational expert, Ms. Richter, the claimant has past relevant work as a business developer, sales manager, and disaster preparedness coordinator. These are all skilled jobs. The first of these jobs is generally performed in the national economy at the light level of exertion. The latter two jobs are generally performed at the sedentary exertional level. In comparing the claimant's residual functional capacity with the physical and mental demands of these jobs, the undersigned finds that the claimant is able to perform them as generally performed. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

See Next Page



17

6. The claimant has not been under a disability, as defined in the Social Security Act, since September 26, 2006 (20 CFR 416.920(f)), the date the application was filed.

## DECISION

Based on the application for supplemental security income filed on September 26, 2006, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_____
Joan G. Knight
Administrative Law Judge

_____FEB 2 0 2008_____
Date

